UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HANDSOME PETER PARKER,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

    _____/

Case No. 1:17-CV-419
(Criminal Case: 1:16-CR-35)

HON. GORDON J. QUIST

**OPINION**

Movant, Handsome Peter Parker, filed a motion under 28 U.S.C. § 2255 collaterally attacking his criminal sentence. (ECF No. 1.) On October 5, 2016, Parker pled guilty to possession of cocaine base with intent to distribute, and Judge Robert Holmes Bell sentenced Parker to 188 months imprisonment. Parker argues three grounds to support his motion: 1) ineffective assistance of counsel; 2) improper designation as a career offender, resulting in an Eighth Amendment violation; and 3) equal protection clause violation. The United States responded in opposition to Parker's motion. (ECF No. 19.)

Parker has waffled and filed a web of motions as to whether he would like to continue his motion. On October 30, 2017,[1] Parker indicated he would like to withdraw the matter out of fear of repercussions in prison for cooperating with the government. (ECF No. 21.) On November 1, 2017, Parker seemed to be changing his mind. (ECF No. 22.) On November 6, 2017, Parker filed a motion to stay proceedings because 1) he has been working to have a prior state conviction

---

[1] Not all of Parker's filings are dated, so, for purposes of consistency, the listed dates of these motions are the Court filing dates.

removed,[2] and 2) because of changes to the Sentencing Guidelines by Amendment 798. (ECF No. 23.) On November 16, 2017, Parker indicated he would like to "redraw" his appeal because he did not want anyone in prison to read it. (ECF No. 24.) On December 4, 2017, Parker stated he would like to withdraw his motion. (ECF No. 25.) On December 26, 2017, the United States responded to Parker's motion to withdraw, stating it had no objection, and requesting dismissal with prejudice. (ECF No. 27.) On January 8, 2018, Parker asked the Court to "go ahead" and rule on his 2255 motion. (ECF No. 29.) On April 13, 2018, Parker wrote "just to check in" on the status of his motion. (ECF No. 30.) Accordingly, the Court will take Parker for his latest word that he would like the Court to review his motion and consider his prior motions withdrawn.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Parker submits that his guilty plea was "involuntary, unknowing, and unintelligent" because his counsel Peter VanGelderen "guaranteed" that he would get a downward variance, resulting in a sentence of no more than ten years. (ECF No. 2 at PageID.14.) Parker also argues that VanGelderen was ineffective because he "allowed [Parker] to plea guilty to evidence that was illegally seized."

In order to establish a constitutional ineffective assistance of counsel claim, a movant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984). The standard for analyzing ineffective assistance claims is "simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003) (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065). The Court must

---

[2] Presumably because this would impact his sentencing guideline range in the underlying federal criminal case.

presume that the lawyer is competent—the burden is on Parker, therefore, to demonstrate a constitutional violation. *United States v. Cronic*, 466 U.S. 648, 658, 104 S. Ct. 2039, 2046 (1984).

There is no evidence to support Parker's claims. VanGelderen denies ever promising Parker a sentence of ten years or less. VanGelderen was confident in a motion he filed for a downward variance because he believed the career offender guideline "significantly overstated the seriousness of the offense and Mr. Parker's criminal history." (ECF No. 9 at PageID.48.) VanGelderen stated that he and Parker had "lengthy discussions" about the career offender guideline, and the two of them "determined that he was correctly scored as a career offender." (*Id.*) VanGelderen also discussed the importance of his acceptance of responsibility for a reduction to his sentencing range—and how pursuing a motion to suppress evidence on the same day of the final pretrial conference would forfeit that reduction. (ECF No. 9 at PageID.47.)

At Parker's plea hearing, Judge Bell asked Parker, "Has anyone made any promise of leniency or told you they know what the sentence this Court is going to impose will be?" Parker answered, "No, your honor." (No. 1:16-CR-35, ECF No. 36 at PageID.160.) Parker also said that he and VanGelderen had discussed the possible sentence at length, that he was giving his plea freely and voluntarily, and that he understood the Court's discretion in following the guidelines. (*Id.* at 160–61.) Representations by a defendant "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977). The Court followed proper plea colloquy procedures under Federal Rule of Criminal Procedure 11(b). Parker's conclusory and unsupported assertions that VanGelderen promised him a sentence of less than ten years fall flat. VanGelderen's own sworn affidavit and contemporaneous memoranda,

and Parker's statements at the plea hearing defeat his claim of ineffective assistance related to his sentencing.

Parker also alleges ineffective assistance of counsel related to his motion to suppress—this argument fails as well. Parker argues that VanGelderen rendered "deficient performance" under *Strickland* because he did not "follow through on the motion to suppress evidence based on the fact that it was a warrantless search." (ECF No. 2 at PageID.17.)

After Muskegon Police arrested Parker for driving a truck that had been reported missing and for a parole violation, the police transported Parker to the Muskegon County Jail. En route, Officer Dunmire noticed that Parker was squirming around in the backseat—in a way Dunmire recognized as a method subjects often use to hide drugs or other contraband. While being processed through jail intake, Officer Dunmire and Deputy Stephenson did a strip search of Parker. Dunmire and Stephenson found a clear plastic bag containing three rocks of crack cocaine between Parker's buttocks. In the government's response brief to Parker's motion to suppress, the government stated, "No part of the plastic bag had been in Parker's rectum and Dunmire felt no resistance when removing the plastic bag." (No. 1:16-CR-35, ECF No. 19 at PageID.36.) VanGelderen stated that the contemporaneous police report, which the government provided to him, reflected this characterization of the events. Parker now alleges that the crack was inside his rectum, and the warrantless search of his body cavity was an unreasonable search. (ECF No. 2 at PageID.16–17.)

VanGelderen notes that, at Parker's request, he researched the issue and informed Parker that a motion to suppress the search and its fruits, *i.e.*, the crack, would not likely win. Parker provided VanGelderen with a motion another inmate had filed, and lost, on a similar issue. Because Parker was insistent, VanGelderen continued with the motion. (ECF No. 9 at PageID.46.)

4

The Court scheduled the suppression hearing for the same day of the final pretrial conference; the government then informed VanGelderen that Parker would forfeit his third-level acceptance of responsibility under the Sentencing Guidelines § 3E1.1(b) if he pursued the motion on that day. Due to his earlier concerns regarding the motion and the potential loss of a reduction, VanGelderen again stressed to Parker the demerits of continuing with the motion to suppress. Parker decided to withdraw the motion. (ECF No. 9 at PageID.46–47.) At the plea hearing, Parker stated that he was satisfied with VanGelderen's representation of him. (No. 1:16-CR-35, ECF No. 36 at PageID.156.) Considering this, the likelihood that the motion would be denied, and the potential impact the motion would have on Parker's sentencing, and the presumption of competency, VanGelderen's assistance was certainly "reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. For example, if Judge Bell had found that Parker was lying about the search, Parker, in addition to losing the third point under U.S.S.G. § 3E1.1(b), could have been assessed obstruction points pursuant to U.S.S.G. § 3C1.1, App. Note 4(F).

Therefore, Parker's arguments to vacate his sentence due to ineffective assistance of counsel will be rejected.

### CAREER OFFENDER DESIGNATION

Parker next argues that he was illegally scored as a career offender under Sentencing Guideline § 4B1.1, and his sentence therefore violated the Eighth Amendment for being a cruel and unusual punishment.

Parker's claim is procedurally defaulted because he never raised it at his sentencing and has not appealed his case. *See Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639 (1986). In any event, his claim is also not cognizable on collateral review. Parker states that he raises the issue under *Mathis v. United States*, --- U.S. ---, 136 S. Ct. 2243 (2016). *Mathis* was not a constitutional

5

claim; it can only serve as a basis to attack the guideline range. *See In re Conzelmann*, 872 F.3d 375, 376 (6th Cir. 2017). Parker's claim also cannot stand as an Eighth Amendment claim because "'[a] sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Moore*, 643 F.3d 451, 454 (6th Cir. 2011) (internal quotation marks omitted). Accordingly, Parker has not argued a constitutional issue. "[W]here nonconstitutional issues are at stake, 'there is no basis . . . for allowing collateral attack' to do service for an appeal.'" *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996) (quoting *United States v. Timmreck*, 441 U.S. 780, 784, 99 S. Ct. 2085, 2087 (1979)).

Therefore, Parker's argument that his sentence was a violation of the Eighth Amendment is not cognizable and is without merit.

## EQUAL PROTECTION CLAUSE

Parker's final claim is that the government violated his rights under the Equal Protection Clause of the Fifth Amendment because the government selectively prosecuted him due to race.

This claim is procedurally defaulted. The time to raise such an argument is prior to trial, according to Federal Rule of Criminal Procedure 12(b)(3). *See United States v. Brimite*, 102 F. App'x 954, 955 (6th Cir. 2004).

This claim also fails on the merits. Parker has offered no evidence of discriminatory intent or discriminatory effect to support a selective prosecution claim. *United States v. Jones*, 159 F.3d 969, 976–77 (6th Cir. 1998). Instead, his only basis is that on the national level, most prosecutions for crack-related offenses are against black individuals; because he is black and was charged with a crack-related offense, Parker argues that this is a violation of his equal protection rights. Parker offers no evidence that the government brought the charges against him due to racial animus. *See Brimite*, 102 F. App'x at 956; *Jones*, 159 F.3d at 975–77. Parker also fails to establish

6

discriminatory effect. *See, e.g.*, *Brimite*, 102 F. App'x at 956 (rejecting discriminatory effect argument because Brimite failed to show that similarly situated individuals of other races were not prosecuted when they could have been).

Therefore, Parker's argument that his prosecution was a violation of the Fifth Amendment Equal Protection Clause will be rejected.

## *SLACK* STANDARDS

Under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Parker has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Parker's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The Court finds that reasonable jurists could not find that this Court's dismissal of Parker's claims was debatable or wrong. Therefore, the Court will deny Parker a certificate of appealability.

## CONCLUSION

For these reasons, Parker's § 2255 motion (ECF No. 1) will be denied. His other pending motions, *i.e.*, motions to withdraw and stay, will be denied as moot. A certificate of appealability will be denied.

A separate order will issue.


Dated: April 26, 2018 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE